## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAM-WOOD HOLDINGS LLC, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| FERROGLOBE PLC, PEDRO LARREA, and PHILLIP MURNANE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Jam-Wood Holdings LLC ("Plaintiff"), individually and on behalf of all others similarly situated, by and through its attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation:  (a) review and analysis of regulatory filings made by Ferroglobe PLC ("Ferroglobe" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Ferroglobe; and (c) review of other publicly available information concerning Ferroglobe.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Ferroglobe securities between August 21, 2018 and November 26, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Ferroglobe purports to produce silicon metal, silicon-based alloys, and manganese-based alloys and to sell products such as aluminum, silicone compounds, automotive parts, photovoltaic cells, electronic semiconductors, and steel.

3.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that:  (i) there was excess supply of the Company's products; (ii) demand for the Company's products was declining; (iii) consequently, the pricing of the Company's products would be materially impacted; and (iv) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

4.     On November 26, 2018, the Company reported a net loss of $2.9 million for the third quarter 2018, compared to a net profit of $66.0 million the prior quarter.

5.     On this news, the Company's share price fell $2.97 per share, more than 62%, to close at $1.80 per share on November 27, 2018, on unusually high trading volume.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Ferroglobe securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Ferroglobe is incorporated under the laws of England and Wales with its principal executive offices located in London, United Kingdom.  Ferroglobe's shares trade on the NASDAQ exchange under the symbol "GSM."

13.     Defendant Pedro Larrea ("Larrea") was the Chief Executive Officer of the Company at all relevant times.

14.     Defendant Phillip Murnane ("Murnane") was the Chief Financial Officer of the Company at all relevant times.

15.     Defendants Larrea and Murnane, (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities

analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.      Ferroglobe purports to produce silicon metal, silicon-based alloys, and manganese-based alloys and to sell products such as aluminum, silicone compounds, automotive parts, photovoltaic cells, electronic semiconductors, and steel.

### Materially False and Misleading
### Statements Issued During the Class Period

17.      The Class Period begins on August 21, 2018.   On that day, the Company published a press release announcing the second quarter 2018 financial results.   It reported a net profit of $66.0 million, or $0.39 per share, and adjusted EBITDA of $86.3 million.

18.      In the press release, Defendant Larrea stated that volumes and selling prices "have significantly increased" in the year to date.   Moreover, regarding the demand for products, he stated:

> The steel industries in North America and Europe – the main end markets for most of [the Company's] alloys – are experiencing strong demand and high capacity utilizations in the wake of recent trade protection measures. Prices of our

products have remained broadly stable overall, and current supply/demand dynamics in our industry should support continued healthy pricing.

19.    On August 22, 2018, Defendants Larrea and Murnane participated in a conference call to discuss the financial results with analysts.  Regarding silicon metal, Defendant Larrea stated that "despite some pricing declines in the US and in European indices, Ferroglobe maintained a flat realized average selling price for silicon metal, reflecting a well-managed commercial strategy and a good mix of fixed and index price contracts."

20.    During the call, Defendant Larrea reiterated strong market conditions supported the business.  Specifically, he stated that "the overall supply/demand tension in the market, as well as increasing input costs, provide good reason to expect prices [of silicon metal] to remain broadly stable around these levels."  Moreover, he stated:  "A recent wave of earnings updates and outlooks by many of our major customers across these verticals reinforces our confidence that demand in the next eighteen months should remain healthy.  We do not think the evolving trade wars and tariffs which has targeted the steel and aluminum sectors in particular will impact the aggregate demand for steel or aluminum globally."

21.    On September 5, 2018, in the middle of the third quarter, the Company participated in the Goldman Sachs Leveraged Finance Conference, where Defendants Larrea and Murnane led investors to believe that the factors underlying the Company's growth during the first half of the fiscal year would continue.  Specifically, Defendant Larrea stated that "market fundamentals are accelerating the demand for our products," pointing to population growth, urbanization, energy efficiency, and sustainability as megatrends that increase demand for the Company's products.  Defendant Murnane used the quarterly trend in revenue and adjusted EBITDA to suggest that the second quarter's strong performance would continue.

22.     The above statements identified in ¶¶ 17-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that:  (i) there was excess supply of the Company's products; (ii) demand for the Company's products was declining; (iii) as a result, the pricing of the Company's products would be materially impacted; and (iv) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

### The Truth Begins to Emerge

23.     On November 26, 2018, Ferroglobe reported poor financial results for the third quarter 2018.  In a press release, Ferroglobe reported a net loss of $2.9 million and adjusted EBITDA of $45.0 million, which was down 47.9% from the prior quarter adjusted EBITDA of $86.3 million.

24.     In the press release, Defendant Larrea attributed the poor performance to "market conditions in our main products [that] deteriorated through Q3."   Regarding Ferroglobe's response to these conditions, Defendant Larrea stated:

> Ferroglobe has taken swift action to optimize our position across our global production base. In this regard, we are curtailing production in our silicon metal and manganese-based alloys businesses in order to take advantage of our diversified portfolio by optimizing production among our most cost effective plants and geographies. We also continue to look at further measures to control our costs, to draw down inventories, and to enhance our free cash flow profile. That said, we are operating in a volatile environment currently and our financial results may continue to be challenged in the near-term.

25.     On November 27, 2018, Defendants Larrea and Murnane participated in a conference call to discuss the financial results with analysts.  Defendant Larrea stated that "the most significant driver of the Q3 results was reduced pricing, specifically average sales price for silicon metal declined 4.9% versus Q2 2018 [due to] silicon production at high rates, the impact

of customers stocking up in anticipation of the trade case, and availability of aluminum scrap." Additionally, he stated that the sales of silicon metal "were impacted by the availability of aluminum scrap, which is now burdened by a 25% tariff on imports from the US into China."

26.     Regarding the manganese-based alloys, Defendant Larrea stated that, in addition to the delink of alloy prices from ore prices, the Company faced "logistical challenges along the supply chain which resulted in some orders not being shipped during the quarter."

27.     Regarding the adjusted EBITDA, Defendant Larrea reiterated that "the biggest factor contributing to the decline this quarter has been pricing."

28.     On this news, Ferroglobe's share price fell $2.97 per share, more than 62%, to close at $1.80 per share on November 27, 2018, on unusually high trading volume.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Ferroglobe securities between August 21, 2018 and November 26, 2018, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Ferroglobe's common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Ferroglobe shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of

the Class may be identified from records maintained by Ferroglobe or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

> a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;
>
> b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Ferroglobe; and
>
> c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

35.     The market for Ferroglobe's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Ferroglobe's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Ferroglobe's securities relying upon the integrity of the market price of the Company's securities and market information relating to Ferroglobe, and have been damaged thereby.

36.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Ferroglobe's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Ferroglobe's business, operations, and prospects as alleged herein.

37.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ferroglobe's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period

resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

38.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

39.     During the Class Period, Plaintiff and the Class purchased Ferroglobe's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

40.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Ferroglobe, their control over, and/or receipt and/or modification of Ferroglobe's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ferroglobe, participated in the fraudulent scheme alleged herein.

10

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

41.     The market for Ferroglobe's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Ferroglobe's securities traded at artificially inflated prices during the Class Period. On August 29, 2018, the Company's share price closed at a Class Period high of $8.53 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Ferroglobe's securities and market information relating to Ferroglobe, and have been damaged thereby.

42.     During the Class Period, the artificial inflation of Ferroglobe's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ferroglobe's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Ferroglobe and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

43.     At all relevant times, the market for Ferroglobe's securities was an efficient market for the following reasons, among others:

a)      Ferroglobe shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

b)      As a regulated issuer, Ferroglobe filed periodic public reports with the SEC and/or the NASDAQ;

c)      Ferroglobe regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d)      Ferroglobe was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

44.     As a result of the foregoing, the market for Ferroglobe's securities promptly digested current information regarding Ferroglobe from all publicly available sources and reflected such information in Ferroglobe's share price.   Under these circumstances, all purchasers of Ferroglobe's securities during the Class Period suffered similar injury through their purchase of Ferroglobe's securities at artificially inflated prices and a presumption of reliance applies.

45.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is

not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

46. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Ferroglobe who knew that the statement was false when made.

## COUNT I

**(Violations of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants)**

47. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ferroglobe's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

49.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ferroglobe's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ferroglobe's financial well-being and prospects, as specified herein.

51.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ferroglobe's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Ferroglobe and its business

operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

52.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts:  (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

53.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Ferroglobe's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations,

financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Ferroglobe's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Ferroglobe's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Ferroglobe was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Ferroglobe securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

**(Violations of Section 20(a) of The Exchange Act
Against the Individual Defendants)**

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of Ferroglobe within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.     As set forth above, Ferroglobe and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 15, 2019                           Respectfully submitted,


                                                **POMERANTZ LLP**

                                                */s/ Jeremy A. Lieberman*
                                                Jeremy A. Lieberman
                                                J. Alexander Hood II
                                                Jonathan D. Lindenfeld
                                                600 Third Avenue, 20th Floor
                                                New York, New York 10016

Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

**Submission Date**

2019-02-08 14:26:49

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Ferroglobe PLC ("Ferroglobe" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Ferroglobe securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Ferroglobe securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Ferroglobe securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Robert Wood

**If Representing Corporation, Trust, Partnership or other entity, Name of Entity**

Jam-Wood Holdings, LLC

**If Representing an Entity, Position at Entity**

Manager / Member

## Acquisitions

**Configurable list (if none enter none)**

(see attached)

## Sales

**Configurable list (if none enter none)**

(see attached)

## Documents & Message

**Upload your brokerage statements showing your individual purchase and sale orders.**

(redacted)

**Signature**



**Full Name**

Robert Wood



**Ferroglobe plc (GSM)**                                                    **Jam-Wood Holdings LLC**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 9/4/2018 | Purchase | 1,500 | $8.0300 |
| 9/4/2018 | Purchase | 200 | $8.0250 |
| 9/4/2018 | Purchase | 2,298 | $8.0290 |
| 9/4/2018 | Purchase | 2 | $8.0300 |
| 9/4/2018 | Purchase | 6,000 | $8.0250 |
| 10/9/2018 | Purchase | 5,000 | $7.2915 |